UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ARTHUR AL RIOS, SR.,

          Plaintiff,

          v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

3:10-CV-01422 -ST

OPINION AND ORDER

STEWART, Magistrate Judge:

### **INTRODUCTION**

Plaintiff, Arthur Al Rios, Sr. ("Rios"), seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 USC §§ 401-33, and Supplemental Security Income ("SSI") under Title XVI of the SSA, 42 USC §§ 1381-83f. This court has jurisdiction to review the Commissioner's decision pursuant to 42 USC § 405(g) and § 1383(c)(3).

All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

For the reasons set forth below, the Commissioner's decision is AFFIRMED.

1 – OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Rios protectively filed for DIB and SSI on October 26, 2006, alleging a disability onset date of December 31, 2005.  Tr. 12, 166-74.[1]  His applications were denied initially on January 9, 2007, and on reconsideration on August 8, 2007.  Tr. 12, 91-94.  On August 26, 2009, a hearing was held before Administrative Law Judge ("ALJ") Catherine R. Lazuran.  Tr. 29-90.  The ALJ issued a decision on December 8, 2009, finding Rios not disabled.  Tr. 9-23.  The Appeals Council denied a request for review on October 26, 2010.  Tr. 1-3.  Therefore, the ALJ's decision is the Commissioner's final decision subject to review by this court.  20 CFR § 410.670a.

## BACKGROUND

Born in 1970, Rios was age 39 at the time of the hearing before the ALJ.  Tr. 34.  He has a high school education and took community college classes, earning a certificate in "Automated Office Work."  Tr. 6, 529.  His past relevant work experience includes jobs in customer service, food service, and data entry, as well as jobs as a kitchen helper, janitor, receptionist, warehouse worker, cashier (in a sheltered work environment), and a timekeeper/floor manager (also in a sheltered work environment).  Tr. 21, 271.  Rios alleges that he is unable to work due to the combined impairments of degenerative disk disease of the lumbar spine, bipolar disorder, residua of injuries to both hands and legs with arthritis, depression, anxiety, chronic pain syndrome, and hepatitis C.  Tr. 269.

## DISABILITY ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1]  Citations are to the page(s) indicated in the official transcript of the record filed on April 19, 2011 (docket #12).

2 – OPINION AND ORDER

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 USC § 423(d)(1)(A).  The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 CFR §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity.  If so, the claimant is not disabled.  20 CFR §§ 404.1520(a)(4)(i) & (b), 416.920(a)(4)(i) & (b).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement.  20 CFR §§ 404.1520(a)(4)(ii) & (c), 416.909, 416.920(a)(4)(ii) & (c).  Absent a severe impairment, the claimant is not disabled.  *Id*.

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations.  20 CFR §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d); 20 CFR Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by his or her impairments.  20 CFR §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work.  20 CFR §§ 404.1520(a)(4)(iv) & (e), 416.920(a)(4)(iv) & (e).  If the claimant cannot perform past relevant work, then at step five, the ALJ must determine if the claimant can perform other work in the national economy.  *Bowen v. Yuckert*, 482 US 137, 142 (1987); *Tackett v. Apfel*, 180 F3d 1094, 1099 (9th Cir 1999); 20 CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g).

The initial burden of establishing disability rests upon the claimant.  *Tackett*, 180 F3d at 1098.  If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist in the national economy within the claimant's RFC.  *Id*.  If the Commissioner meets this burden, then the claimant is not disabled.  20 CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g), 416.960(c).

## ALJ'S FINDINGS

At step one, the ALJ concluded that Rios has not engaged in substantial gainful activity since December 31, 2005.  Tr. 14.  Although he worked after his alleged disability onset date, the work activity did not rise to the level of substantial gainful activity.  *Id*.

At step two, the ALJ determined that Rios has the severe impairments of a mood disorder, a history of drug addiction, a history of hand fractures, and hepatitis C.  *Id*.

At step three, the ALJ concluded that Rios does not have an impairment or combination of impairments that meets or equals any of the listed impairments.  Tr. 15-16. The ALJ found that Rios has the RFC to perform light work, except he:  (1) needs to avoid extended standing and walking and can walk only four hours in an eight hour day; (2) needs to be able to stretch his left leg occasionally with a sit/stand option; (3) can perform simple and detailed tasks; (4) should avoid hazards; (5) can occasionally lift 20 pounds and

frequently lift 10 pounds; and (6) can occasionally perform gross and fine manipulation, push with the left lower extremity, climb, kneel, crouch, and crawl, use the left non-dominant arm for fine fingering.  Tr. 16.

Based upon the testimony of a vocational expert ("VE"), the ALJ determined at step four that Rios's RFC allowed him to perform his past relevant work as a receptionist. Tr. 21-22.  Alternatively, at step five, the ALJ found that considering Rios's age, education, and RFC, he was capable of performing jobs as a general office worker and a surveillance system monitor.  Tr. 23.  Accordingly, the ALJ determined that Rios was not disabled at any time through the date of the decision.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  42 USC § 405(g); *Lewis v. Astrue*, 498 F3d 909, 911 (9th Cir 2007).  This court must weigh the evidence that supports and detracts from the ALJ's conclusion.  *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998). The reviewing court may not substitute its judgment for that of the Commissioner.  *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F3d 1194, 1205 (9th Cir 2008), citing *Parra v. Astrue*, 481 F3d 742, 746 (9th Cir 2007); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).  Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "'supported by inferences reasonably drawn from the record.'"  *Tommasetti v. Astrue*, 533 F3d 1035, 1038 (9th Cir 2008), *quoting Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004); *see also Lingenfelter*, 504 F3d at 1035.

## ANALYSIS

The thrust of this appeal is that the ALJ erred by failing to follow the correct analysis in evaluating Rios's mental disorders. Specifically, Rios asserts that the ALJ erred at step two by finding his impairments of depression, attention deficit disorder, chronic pain syndrome, and bipolar disorder to be non-severe.

At step two, the ALJ noted "other symptoms and complaints that appear periodically throughout the record," including those cited by Rios (depression, attention deficit disorder, chronic pain syndrome, bipolar disorder) and a variety of other physical symptoms. Tr. 15. The ALJ concluded that these alleged impairments were not medically severe "because, considered singly or in combination, [they] caused only transient and mild symptoms and limitations, are well controlled by treatment or are otherwise not adequately supported by the medical evidence in the record." *Id.*

## I. Special Psychiatric Review Technique

Rios contends that the ALJ failed to perform the special psychiatric review technique at step two and that a proper analysis would have resulted in a finding of disability based on Listing 12.04. In support, Rios relies exclusively on a recent Ninth Circuit decision under Title II of the SSA holding that:

> In step two of the disability determination, an ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. In making this determination, an ALJ is bound by 20 C.F.R. § 404.1520a. That regulation requires those reviewing an application for disability to follow a special psychiatric review technique . . . . Specifically, the reviewer must determine whether an applicant has a medically determinable mental impairment, . . . rate the degree of functional limitation for four functional areas, . . . determine severity of the mental impairment (in part based on the degree of functional limitation),

> . . . and then, if the impairment is severe, proceed to step three of
> the disability analysis to determine if the impairment meets or
> equals a specific listed mental disorder.

*Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F3d 721, 725 (9th Cir 2011) (citations omitted).

Following her step two conclusion, the ALJ considered at step three whether Rios's

mental impairments met or medically equaled a listed impairment, specifically considering

Listing 12.04. Rios contends that under *Keyser,* that step three analysis should have been

performed at step two.

Rios's reliance on *Keyser* is misplaced. In *Keyser*, "the written decision did not

document the ALJ's application of the [psychiatric review] technique and did not include a

specific finding as to the degree of limitation in any of the four functional areas." *Keyser*, 648

F3d at 726. Instead, the ALJ simply referenced and adopted a Psychiatric Review Technique

Form ("PRTF") completed by a state agency medical consultant and "did not state his findings as

to the four functional areas[.]" *Id.* As a result, the ALJ's analysis at step three also was

erroneous because he never addressed whether the claimant's mental impairment met or equaled

a listed impairment. The court found that this error was "understandable given the ALJ's

adoption" of the state agency medical consultant's "conclusion that the medical impairment was

not severe." *Id* at 727.

Unlike *Keyser*, the ALJ resolved step two in Rios's favor, finding several severe

impairments. Thus, a failure to find other severe impairments is harmless error. *See Gray v.

Comm'r of Soc. Sec. Admin*., 365 Fed Appx 60, 61 (9th Cir 2010) (rejecting argument that the

ALJ erred at step two by determining certain impairments were nonsevere, because any alleged

error was harmless since "the ALJ concluded that [claimant's] other medical problems were

severe impairments"); *see also Mondragon v. Astrue*, 364 Fed Appx 346, 348 (9th Cir 2010)

("Any alleged error at step two was harmless because step two was decided in [claimant]'s favor with regard to other ailments.").

In addition, unlike *Keyser*, the ALJ's written decision is not devoid of reference to the four functional areas.  At step three, the ALJ specifically found that Rios's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.09." Tr. 15.  In reaching that conclusion, the ALJ made specific findings as to the four functional areas.  The ALJ assigned ratings to three functional areas of either "mild" (social functioning) or "mild to moderate" (activities of daily living; concentration, persistence or pace) and found that Rios experienced "no episodes of decompensation."  Tr. 15-16.  Accordingly, she concluded that the "paragraph B" criteria of Listing 12.04 were not satisfied.  Tr. 16.  Rios does not state exactly what symptoms or limitations he experiences that merit a "severe" rating for any of the functional areas.

Moreover, the ALJ stated that "[t]he limitations in the 'paragraph B' criteria are not a residual functional capacity assessment but are *used to rate the severity of mental impairments at steps 2 and 3* of the sequential evaluation process." Tr. 16 (emphasis added).  Based on this statement, the ALJ presumably included both the severe and nonsevere mental impairments identified at step two when performing the step three analysis.

In short, the ALJ did not commit error at step two, or alternatively, if she did, the error was harmless.

### III.  Step Three Analysis

Rios also argues that that the error at step two tainted the ALJ's step three analysis by failing to consider his non-severe impairments in determining if he met or equaled Listing 12.04.

A claimant bears the burden of proving she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations. *Burch v. Barnhart*, 400 F3d 676, 683 (9th Cir 2005). To meet this burden a claimant must offer a "theory plausible or otherwise, as to how his [impairments] combined to equal a listed impairment." *Lewis v. Apfel*, 236 F3d 503, 514 (9th Cir 2001). That is to say, a claimant should "specify which listing she believes she meets or equals . . . [and] set forth any evidence which would support the diagnosis and findings of a listed impairment." *Burch*, 400 F3d at 683.

Rios argues that the ALJ cited evidence which contradicts her findings and ignored other evidence. In particular, he contends that the ALJ erred by finding only a "mild" limitation in his ability to maintain social functioning because that finding is inconsistent with the observation that he is sometimes violent with others when stressed. The ALJ credited Rios's own statement that he handles stress by "get[ting] mad and sometimes violent with others," finding it "vague" but indicative of "some social problems." Tr. 15, citing Tr. 267 (Ex. 8E/7). Rios does not identify other evidence in the record which he contends merits a finding of a more serious limitation in his ability to maintain social functioning. At the hearing, Rios testified that in early 2008 he did not feel he needed treatment for psychological issues. Tr. 68. Instead, he would report any issues to his attending physician. *Id*. Treatment records from Westside Primary Care Clinic, Portland Alternative Health Center, and LifeWorks NW spanning the time period between late 2006 and September 1, 2009, reveal nothing more than intermittent bouts of irritability which Rios's treatment providers were managing with medication, and one altercation in early January 2007 during which Rios was punched in the face. Tr. 400-415, 596-726.[2] As

---

[2] Such references, in chronological order, include: Tr. 661 (12/14/06, "Less irritated."); 660 (1/8/07, injury to face from being punched); 658 (1/11/07, "Mood more stable. Less irritable."); 657 (2/26/07, "still very irritable"); 655 (3/12/07, "mood 'fine' & irritable"); 651 (7/20/07, "mood okay"); 649 (8/27/07, "really irritable"); 648 (9/25/2007, "less irritable"); 647 (12/13/2007,

noted by the ALJ, Rios spends time with others in a variety of settings including treatment, meetings, court appearances, and the probation office, all without apparent difficulty. Tr. 19-20. An exhaustive review of the record reveals no basis on which to overturn the ALJ's finding that Rios has only mild limitations in his ability to maintain social functioning.

Rios also contends that the ALJ's finding of only "mild to moderate" restrictions in his activities of daily living is inconsistent with his highly structured and supervised daily activities which include living in a homeless shelter, taking his meals either at the shelter or the probation office, and working in a sheltered environment. While recognizing that Rios engaged in "fairly extensive" daily activities, the ALJ found that he was not "completely independent" in those activities and, therefore, assigned a "mild to moderate" restriction. Tr. 15. The relevant regulation includes a multitude of events under the heading of "activities of daily living," including "adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 CFR Pt. 404, Subpt. P., App. 1, § 12.00(C)(1). Nothing in the record calls for any greater finding of limitation in Rios's activities of daily living. Instead, Rios's arguments are, at best, an improper request that this court substitute its judgment for that of the Commissioner. *Ryan*, 528 F3d at 1205; *Edlund*, 253 F3d at 1156. Accordingly, there is no basis from which to conclude that the ALJ erred in making the paragraph B findings regarding Listing 12.04.

Rios also disputes the paragraph C findings. At step two, the ALJ found Rios's mood disorder to be a severe impairment, but not his depression, attention deficit disorder, chronic pain

---

"going to get a psych. eval."); 712 (3/10/08, reports being "extremely irritable and 'snappy'"; diagnosed with bipolar disorder); 710 (5/20/08, mood "described as stable"); 708 (6/23/08, "doing well" on Lamictal but "continues to have some mood lability as well as some depressive symptoms"); 703 (10/23/08, increase in sleeplessness and irritability); and 701 (3/12/09, "doing fairly well with regard to his bipolar . . . denies any new sleeplessness or irritability").

disorder, or bi-polar disorder.  Tr. 15.  Since this severe mood disorder existed at the alleged

onset date of December 31, 2005, Rios takes issue with the ALJ's paragraph C finding that his

"medical history fails to demonstrate that he has a chronic affective disorder of at least 2 years'

duration that has caused  more than a minimal limitation in his ability to do basic work

activities."  Tr. 16.  There are several difficulties with this position.  First, the alleged onset date

is not medical evidence which can support a paragraph C finding.  However, the ALJ does note a

mood disorder diagnosis dating back to the examination by M. John Givi, PhD, a clinical

psychologist, on December 14, 2006 (Tr. 528-35), well over two years prior to the decision date

of December 8, 2009.  Tr. 17-18.  The second difficulty lies in the specifics of Dr. Givi's report.

Dr. Givi − whose opinion the ALJ gave considerable weight with regard to psychological issues−

found no reason that Rios was unable to work from a psychological standpoint.  Tr. 18, 534.

Even assuming for the sake of argument that the ALJ erred by not continuing the

paragraph C analysis, the result does not change.  The record reveals no evidence to meet the

requirements of paragraph (C)(1) or (C)(2), leaving only (C)(3) which requires a "[c]urrent

history of 1 or more years inability to function outside of a highly supportive living arrangement,

with an indication of continued need for such an arrangement."  20 CFR Pt. 404, Subpt. P,

App.  1 § 12.04(C)(3).  Rios has intermittently lived in a homeless shelter and, at the time of the

hearing, was living in government subsidized housing.  Tr. 62, 88-89.  He had to choose between

obtaining and undergoing treatment for his medical condition (thus being unable to work at his

sheltered job during that time, losing his income, not paying bills, and becoming homeless again)

or foregoing medical treatment and maintaining his sheltered job (thus being able to work,

earning income, paying bills and maintaining his subsidized housing).  Tr. 62.  Although this

situation is unfortunate, it does not indicate a continuing medical need for a highly supportive

11 – OPINION AND ORDER

living arrangement as contemplated under 20 CFR Pt. 404, Subpt. P, App. 1 § 12.04(C)(3).

Accordingly, to the extent the ALJ erred by continuing on to this portion of the paragraph C

analysis with respect to Listing 12.04, the error was harmless. *See Barto v. Astrue*, 2011 WL

5865951 *6 (D Or Nov. 22, 2011) (failure to properly evaluate evidence under Listing 12.04(C)

harmless where the record reveals that claimant did not meet its criteria).

Accordingly, the record reveals no basis to reverse the findings of the Commissioner.

## **ORDER**

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

DATED May 15, 2012.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge